[Civil No. 2275.   Filed February 17, 1925.]

[233 Pac. 580.]

STATE, Appellant, v. M. KISSELBURG and C. T. SCHMIDT, Copartners Doing Business as Such Under the Firm Name and Style of KISSELBURG & SCHMIDT, Appellees.

1. CONTRACTS—CONTRACTOR ENTITLED TO SUE FOR INSTALLMENTS DUE. Where contract called for payment of ninety per cent of value of completed work as it progressed, contractor *held* entitled to sue for installments due before completion of entire contract.

2. HIGHWAYS—DECISION OF STATE ENGINEER, APPOINTED FINAL JUDGE OF ALL DISPUTES UNDER CONTRACT, BINDING ON QUESTIONS OF

1.  See 1 R. C. L. 352.

2.  Conclusiveness as between municipality and contractor of decision of engineer or other empowered officer as to matters concerning contract for public improvements, see note in 23 L. R. A. (N. S.) 317.

FACT BUT NOT OF LAW.—Provision that all disputes arising under contract were to be finally determined by state engineer, *held* not to make his decision binding on issues of law, such as legal meaning of contract terms, provision being construed to refer only to issues of fact, such as quantity and quality of work.

3. HIGHWAYS — PROVISIONS OF ROAD CONSTRUCTION CONTRACT AS TO COMPENSATION PER CUBIC YARD, CONSTRUED.—In action against state on contract to construct road, where dispute was whether compensation for surfacing as provided per yard, referred to loose cubic yardage of material, f. o. b. cars, or compacted square yardage in place on road, contract was construed to call for loose cubic yardage, especially in view of rule that contract is construed most strongly against maker.

See (1) 13 **C. J.**, p. 582.   (2) 29 **C. J.**, p. 609.   (3) 29 **C. J.**, p. 608.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

Messrs. Baker & Whitney and Mr. E. J. Flanigan, for Appellees.

LOCKWOOD, J.—On October 25, 1922, M. Kisselburg and C. T. Schmidt, copartners, as Kisselburg & Schmidt, hereinafter called plaintiffs, entered into a contract through the then state engineer, Thomas Maddock, with the state of Arizona, for certain work on the Yuma-Phoenix highway, federal aid project No. 55.

A dispute arose during the course of construction of the road, over the amount due plaintiffs from the state for certain surfacing done under the contract. Plaintiff brought suit against the state of Arizona, referred to hereinafter as defendant, and

27 Ariz.—22

obtained judgment in the sum of $16,852.76 with interest. From this judgment an appeal was taken by the state.

Defendant makes five assignments of error, which we will consider in such order as seems advisable. The first is, that the evidence failed to show plaintiffs had fully performed their contract, and under the authority of *Greenlee County* v. *Cotey,* 17 Ariz. 542, 155 Pac. 302, they could not recover. The contract called for the payment of ninety per cent of the value of the completed work, in installments as the work progressed, and that is what the suit is for, not for a balance due on a completed contract. The right to sue for installments due exists before the completion of the entire contract. *Simms* v. *Hampson,* 2 Ariz. 237, 12 Pac. 686.

The third is, that under the contract the state engineer had exclusive and final right to determine any dispute between the parties, and as he had determined the issue herein in favor of defendant, it was error for the court to render a judgment which was necessarily in conflict with his holdings. The provision of the contract referred to reads as follows:

"All questions of controversy which may arise between the contractor and the state, under and with reference to this contract, shall be subject to the decision of the state engineer, and his decision shall be final and conclusive upon both parties."

Provisions of this general nature in contracts have been repeatedly construed. While the decisions are not wholly in harmony, we think the better rule is that parties may stipulate the decision of some designated person, even though an agent of one of them, shall be binding as to disputed questions of fact, such as quantity and quality of the work done, etc., but no such stipulation can be made binding

parties to accept a decision of law from the umpire, such as the legal meaning of a contract, or the terms thereof. The courts of the land cannot thus lightly be divested of their jurisdiction to pass on questions of law. *Mitchell* v. *Dougherty*, 90 Fed. 639, 33 C. C. A. 205; *Gubbins* v. *Lautenschlager* (C. C.), 74 Fed. 160; *National Contracting Co.* v. *H. R. Water Co.*, 170 N. Y. 439, 63 N. E. 450; *Delaware & H. Canal Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250; *Blodgett Co.* v. *Bebe Co.*, 190 Cal. 665, 26 A. L. R. 1070, 214 Pac. 38.

It does not appear that there is any dispute as to the quantity or quality of the work, but merely as to the legal construction of the contract, and such being the case the third assignment of error is not well taken.

This brings us to the second assignment, which contains the real matter in dispute between the parties, the fourth and fifth being necessarily governed by our opinion on the first three. Plaintiffs contend the contract provided the unit measure of the surfacing material was loose cubic yardage, f. o. b. cars, while defendant claims it was compacted yardage, in place on the road. In order to determine this question, we must consider certain portions of the specifications prepared by the state, the bid of the plaintiffs, the contract, and if we are still in doubt, the contemporaneous construction, if any, placed on the contract by the parties. We quote from the various documents above referred to, and in evidence, so far as they seem to us to have any bearing on the question at issue.

"Specification No. 2, section 4. Instructions for Filling in Proposal Forms. — (a) The contractor shall show on the proposal form the unit price for each and every class of work called for in said proposal and the gross sum for each and every class of work, such gross sum to be based on the quanti-

ties as shown in the engineer's estimate. (b) The final payment will be based on the unit prices bid, for the amount of work actually performed by the contractor and accepted by the engineer.

"Specification No. 4, section 4. Special Work.— (a) Any special provisions or clauses calling attention to special conditions, and attached hereto, shall be considered as part of this contract and should the special provisions or clauses conflict with other portions of the specifications, such special provisions shall govern.

"Special Specifications, section 3. Basis of payment. This work shall be paid for at the unit price per cubic yard plus the unit price for overhaul. The unit of overhaul shall be one cubic yard hauled 100 feet (which is the equivalent of one station yard) and shall be computed in accordance with section 11 of specification No. 5.

"Specification No. 8–B, section 1. Description.— (a) On the subgrade prepared as specified under the heading 'Excavation and Embankment' of these specifications shall be constructed a gravel surface of the cross-section and compacted thickness shown on the plans, in accordance with the specifications.

"Section 3. Construction Methods. — (a) On the roadbed prepared as hereinbefore described, the gravel shall be spread for the full width of the roadway and to a depth that when compacted it will be the depth shown on the plans. (e) As an alternate, the road may be dressed with a road machine and road drag. (f) A special provision will call attention to which method shall be used.

"Section 4. Basis of Payment.—(a) This work shall be paid for at the contract unit price per square yard for 'gravel pavement,' alternate 'B,' complete in place, which price shall include all materials, equipment, tools, labor and work incidental thereto.

"Specifications for the Construction of Yuma-Phoenix Highway, Federal Aid Project 55, Special Provisions. Section 2.—Alternate bids, as set forth upon the schedules, will be received for surfacing.

"(2) Material obtainable from vicinity of Kim or Mohawk.

"Section 3. If surfacing be done under provision (2) of section 2 such surfacing shall be done in accordance with paragraph (e) section 3, specification 8–B.

"Section 4. The basis of payment shall be the unit bid price per Cubic Yard for each class of material, or as otherwise noted in the Proposal Schedules.

"Proposal. Kisselburg & Schmidt, name of bidder. Phoenix, Arizona, address. Oct. 13, 1922. Date. Known as the Yuma-Phoenix Highway, Federal Aid Project No. 55, Yuma county, Arizona. To the State Engineer, Phoenix, Arizona—Sir: We propose to do the work in accordance with the plans and specifications and for the following prices: . . .

"Alternative Schedule for Surfacing in Accordance with Specification 8–B. (Field inspection indicates possible suitable material in vicinity of Mohawk and Kim.)

| Item. | Approximate Quantities. | Price. Unit Bid | Bid. Amount |
|---|---|---|---|
| 1. | 73,055 cu. yds. surfacing f. o. b. cars for forty-five cents per cu. yd....... | $.45 | $32,874.75 |
| 2. | 73,055 cu. yds. surfacing unloading from cars, placing and shaping (500 ft. free haul) for forty-five cents per cu. yd.......................... | .45 | 32,874.75 |
| 3. | 4,182,552 sta. yds. overhaul (500 free haul) for one cent per sta. yd........ | .01 | 41,825.52 |

"Contract for the Construction of the Yuma-Phoenix Highway,

"Federal Aid Project No. 55.

"This agreement, made and entered into this 25th day of October, 1922, by and between Kisselburg & Schmidt, party of the first part, and the state engineer of the state of Arizona, acting under authority of the laws of Arizona, party of the second part:

"It is hereby mutually agreed and understood that the various items and approximate quantities of each and the unit prices to be paid for each are as set forth in the proposal schedule, copy of which is hereto attached."

It is evident to us from the provisions quoted that there are three specifications relating to the basis of payment, two of which refer to the price

per cubic yard, and one to the price per square yard in place. We find none referring to price per cubic yard complete in place. Were this all, we might find difficulty in determining the true basis of payment, but when we take the proposal of plaintiffs into consideration, there can be no doubt the bid was made on the basis of loose cubic yardage, f. o. b. car, plus overhaul, and the contract provides the unit price paid is set forth in the bid. Taking into consideration the familiar rule that contracts are to be construed most strongly against the maker, in this case the state, and the interpretation placed thereon by the state engineer who actually made it, we do not hesitate in holding the contract called for loose cubic yardage, and not compact yardage in place, and the judgment of the trial court, admittedly correct if this basis of measure should be adopted, is affirmed.

McALISTER, C. J., and ROSS, J., concur.